

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | No. 1:19-MJ-211 |
| MICHEAL TYREE SPAMPINATO, ) | |
| ) | **UNDER SEAL** |
| KENDALL EARL HENRY, ) | |
| ) | |
| MAUREEN MARCELL WISE, ) | |
| ) | |
| KENNETH EARL HENRY, ) | |
| ) | |
| KENNYDE CHEVON HENRY, ) | |
| ) | |
| Defendants ) | |

I, Kevin Fleenor, Task Force Officer of the Drug Enforcement Administration (DEA), Washington Division Office (WDO), Washington, D.C., being duly sworn, depose and state the following:

## I. INTRODUCTION

### A. Background

1. I am a Special Agent with the Virginia State Police (VSP), Bureau of Criminal Investigation, Drug Enforcement Section (DES), Fairfax, Virginia, and have been since 2018. I am currently assigned to the DEA High Intensity Drug Trafficking Task Force located in Annandale, Virginia (Group 10). I have been assigned to this unit since March 2019. Prior to this assignment, I have been employed by the Virginia State Police as a State Trooper; Counter-Terrorism and Criminal Interdiction Unit, Narcotics Canine Handler; and/or Drug Enforcement Section, Special Agent since June 2011. I have received training from the Virginia State Police in

the areas of drug identification, narcotics investigations, undercover investigation, search and seizure, and covert communications and surveillance. I have conducted and assisted in numerous drug related arrests, seizures, and search warrants involving the investigation of drug trafficking on the state and federal level.

2. As a narcotics investigator, I have participated in the application for and execution of numerous arrest and search warrants in the investigation of narcotics, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, and other evidence of criminal activity. I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled dangerous substances.

3. I am responsible specifically for the enforcement of the statutes of the Virginia Commonwealth code pertaining to the possession and distribution of narcotics and controlled dangerous substances, as well as, federal drug trafficking laws in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

4. This affidavit is submitted in support of a criminal complaint and related arrest warrants charging Michael Tyree SPAMPINATO (hereinafter "SPAMPINATO"), Kendall Earl HENRY (hereinafter "HENRY"), Maureen Marcell WISE (hereinafter "WISE"), KENNETH Earl Henry (hereinafter "KENNETH") and KENNYDE Chevon Henry (hereinafter "KENNYDE") with unlawfully, knowingly, and intentionally combining, conspiring, confederating, and agreeing with others, known and unknown, to unlawfully, knowingly, and intentionally distribute 500 grams or more of a mixture and substance containing a detectable

amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

5. Wherever in this affidavit your Affiant discusses information resulting from physical surveillance conducted in this investigation, that information, except where otherwise indicated, does not set forth my own personal observations, but rather that which has been provided directly or indirectly to me through other law enforcement officers who made such observations. Additionally, unless otherwise noted, wherever your Affiant asserts that a statement was made by an individual, such statement is described in substance herein, and is not intended to be a verbatim recitation of such statement. Furthermore, any statements excerpted from recorded conversations, including those that are quoted, are subject to further revision for clarification and/or accuracy.

6. This affidavit contains information necessary to support probable cause for this application. It is not intended to include each, and every fact and matter observed by me or known to the government regarding the investigation.

## II. FACTS ESTABLISHING PROBABLE CAUSE

### A. Controlled Delivery on February 9, 2019

7. In and around February 2019, the DEA, VSP, and The United States Department of Homeland Security Investigations, Homeland Security Investigators (HSI) began investigating the cocaine trafficking and distribution activities of a drug trafficking organization (DTO) involving SPAMPINATO, HENRY, WISE, KENNETH and KENNYDE operating within the Eastern District of Virginia and elsewhere. Law enforcement encountered these individuals during a controlled delivery, search warrant and reversal operation of a parcel containing cocaine in Manassas, Virginia.

8. On or about February 9, 2019, members of the Virginia State Police-Counter Terrorism and Criminal Interdiction Unit (CCI) were conducting parcel interdiction at a UPS Facility in Fairfax County, Virginia. CCI team members identified a suspicious parcel addressed to Kenroy Spampinato 10511 Trinidad Ct., Manassas, VA, 20109, with a UPS tracking number 1Z 6F8 4F3 PW 4503 7107. A narcotics canine was utilized to scan the parcel, which yielded a positive alert to the presence of the odor of narcotics. CCI team members obtained a state search warrant for the parcel in Fairfax County. Located inside the parcel was approximately 1,295 grams of cocaine that was concealed inside a book with a hollowed-out center. The cocaine was vacuum-sealed and taped. Law enforcement officers directly involved with this investigation field tested the substance inside the parcel, which tested positive for cocaine.

9. The package had a sender address of "Box & Ship (323) 934-8986, Marcell Spampinato, 7304 Beverly Blvd Los Angeles CA, 90036." Based on my training, experience and knowledge regarding source locations involved in drug trafficking, California is known to law enforcement as a source state for the distribution of controlled substances such as cocaine. At approximately 1515 hours, agents from DEA, VSP and HSI conducted a joint controlled delivery operation of the parcel that contained cocaine to residence 10511 Trinidad Court, Manassas, VA, 20109.

10. At approximately 1524 hours, a VSP DES agent, acting in an undercover capacity, delivered the parcel to 10511 Trinidad Court Manassas VA, 20109. At approximately 1538 hours, an individual exited the residence and took the parcel inside the townhouse. A short time later, the same individual exited the residence without the parcel. At approximately 1544 hours, law enforcement officers involved in this investigation intercepted the individual, identified as Michael DENNIS Spampinato (hereinafter "DENNIS"), who had exited the target residence. Law

4

enforcement then executed the anticipatory search warrant at 10511 Trinidad Court, Manassas, VA, 20109. During the execution of the search warrant, agents detained SPAMPINATO inside the residence after entry.

11. During the search of the residence, law enforcement located the parcel, containing cocaine, that law enforcement officers previously observed DENNIS take inside the residence. Agents interviewed SPAMPINATO and DENNIS. During the beginning of the interview, DENNIS was read his *Miranda* rights and agreed to speak to law enforcement. On several occasions, DENNIS received phone calls from (323) 217-3136. DENNIS stated to agents that he did not know who was calling him from that number. DENNIS stated that the parcel was not his and that he did not know what was inside the parcel. DENNIS stated that he took the parcel inside the residence and placed it by SPAMPINATO's bedroom because SPAMPINATO had received parcels at the residence in the past. At the request of law enforcement, DENNIS conducted a recorded phone call to (323) 217-3136. During the phone conversation between DENNIS and the individual that used telephone number (323) 217-3136, agents learned that the individual's name was Kendall (Kendall was later identified as HENRY), who resided in Laurel, Maryland. During the phone conversation, HENRY asked DENNIS where SPAMPINATO was because he needed to speak with SPAMPINATO.

12. During the beginning of the interview, SPAMPINATO was read his *Miranda* rights and agreed to speak to law enforcement. Agents observed SPAMPINATO's cellular telephone had received several incoming communications via Snapchat screenname Patron, with emoji symbols after the name Patron. SPAMPINATO advised agents that HENRY was the person that was sending messages to him on his cellular phone via Snapchat. Additionally, SPAMPINATO stated that he was to receive the parcel at his residence, at which point HENRY would come to the

5

residence and retrieve the parcel. At the request of law enforcement, SPAMPINATO contacted HENRY, via Snapchat. HENRY asked SPAMPINATO to send him a picture of the parcel and the shipping label. HENRY advised SPAMPINATO that he would arrive at SPAMPINATO's residence in about one hour to retrieve the parcel. SPAMPINATO advised HENRY that he was leaving the residence soon, and HENRY instructed SPAMPINATO to lock the front door and place the parcel in his bedroom. HENRY also advised SPAMPINATO that he would enter SPAMPINATO's residence using the rear entrance. Additionally, SPAMPINATO informed law enforcement that he received a previous parcel, on behalf of HENRY, that encompassed what SPAMPINATO believed to contain controlled substances.

13. At approximately 2008 hours, agents observed a white BMW sedan that displayed an unknown Maryland temporary registration drive to the rear of the residence and park. HENRY exited the vehicle and used the rear sliding glass door and entered SPAMPINATO's residence. HENRY was detained by agents, inside the residence, near SPAMPINATO's bedroom, located on the second floor, in close proximity of the parcel, which was located outside of SPAMPINATO's bedroom, placed on an end table. HENRY was in possession of a silver Apple iPhone with a clear plastic case. Agents took possession of HENRY's cellular phone, for further investigation.

14. Outside the rear of the residence, inside the BMW sedan that HENRY exited, agents detained one female, identified as Maureen Marcell WISE, based on WISE's Arizona license that WISE provided to law enforcement. Agents also detained one male that provided a Florida driver's license that displayed the name "James Loveland." Over the course of the investigation, agents learned that James Loveland is a documented alias in law enforcement databases for KENNETH. Moreover, the image on the Florida driver's license and the physical description of the male agents encountered closely resembled images in law enforcement databases for KENNETH. Agents also

recovered a Maryland learner's instructional permit from the BMW sedan that belonged to HENRY. During the interview with WISE, she provided agents her cellular number, which was (571) 383-5384. WISE requested that agents contact her using the aforementioned cellular number she provided after HENRY had been taken to jail.

15. Agents transported HENRY to the VSP-BCI Fairfax Field office and interviewed HENRY. During the beginning of the interview, HENRY was read his *Miranda* rights and agreed to speak to law enforcement. HENRY confirmed the cellular phone that was in his possession at the time he was detained, was indeed his phone, and the phone number associated with that cellular phone was (323) 217-3136. This information was consistent with the phone number that agents observed during prior recorded communication with DENNIS. Additionally, the individual that contacted DENNIS with associated telephone number (323) 217-3136 identified himself as "Kendall." HENRY advised agents that he communicated with SPAMPINATO via Snapchat regarding the parcel and its delivery. HENRY stated that an individual named "Mark Smith" contacted him on February 7, 2019 from a blocked number via telephone and asked him to receive the parcel. HENRY stated that during telephone communication, he provided "Mark Smith" SPAMPINATO's last name and address to help facilitate the transportation of the parcel into Virginia. HENRY stated that "Mark Smith" provided him a tracking number for the parcel, and HENRY advised that he used the tracking number associated with the parcel that contained cocaine to track its delivery status. HENRY stated that once he obtained the parcel, "Mark Smith" or another individual was supposed to contact him on his cellular phone and provide instructions regarding the further transport and delivery of the parcel. HENRY stated that he recently received another parcel at SPAMPINATO's address from "Mark Smith." HENRY stated that after he

received that parcel he delivered it to an individual name "Mookes." Additionally, HENRY advised agents that he had knowledge that the parcel contained illegal narcotics.

### B. Cell Phone Evidence

16. During law enforcements review of HENRY's cellular phone, pursuant to a state search warrant, HENRY's phone revealed communications between HENRY, WISE, KENNETH, KENNYDE and other co-conspirators involved in the trafficking and distribution of cocaine. On or about January 7, 2019, WISE texted HENRY and said, "Address." HENRY replied to WISE and said, "10511 Trinidad Court Manassas VA 20109." WISE texted HENRY and said, "Name to use." HENRY replied to WISE and said, "Last name Spampinato." On or about January 21, 2019, WISE asked HENRY for an address. HENRY replied to WISE and told her use the same address as before. HENRY texted WISE and provided her an address of 10511 Trinidad Court, Manassas, VA, 20109. WISE texted HENRY and told HENRY that "he" did not want to use the same address, and HENRY replied to WISE and told her to tell "him" to use the same address because it was not "hot" and that the other person wanted too much money to receive at their address. WISE texted HENRY and stated that "he" was going to use SPAMPINATO's address and that "he" would let HENRY know when it would be ready.

17. On January 8, 2019, HENRY received a text from (916) 873-3453, believed to be KENNYDE, based on a law enforcement open source database searches, that said, "Nini tell smoke[1] that thing will be by his friend tomorrow so for him to link me." KENNYDE sent another text to HENRY that said, "Yo pop[2] said that." On January 9, 2019, KENNYDE sent another text

---

[1] Once HENRY was detained by law enforcement, HENRY informed law enforcement that his name was "Smoke." Additionally, agents believe KENNETH is informing KENNYDE to tell HENRY that a parcel containing cocaine will be at SPAMPINATO'S address the following day.

[2] Based on law enforcements knowledge of this investigation, agents believe KENNYDE was referring to KENNETH. Agents conducted an open source search, which validated that KENNETH is a relative of both KENNYDE and HENRY, with a listed address law enforcement knows to be utilized by KENNYDE, KENNETH

8

to HENRY that contained two images of a UPS document regarding a parcel that was destined to arrive at SPAMPINATO'S address that day.[3] HENRY texted KENNYDE and said, "It's out but it say Chantilly not Manassas yet so hopefully it update later." HENRY texted KENNYDE and said, "Ask him what name on it." KENNYDE texted HENRY and said, "To kenroy and his friend last name." KENNYDE sent another text to HENRY and said, "That him say." KENNYDE sent another text to HENRY and said, "Spampinato." Based on agents training, experience and knowledge of this investigation, the male individual that KENNYDE referred to when texting HENRY was KENNETH.

18. On February 4, 2019, HENRY received a text from cellular number (703) 249-3787, that was saved in HENRY'S phone as an emoji "B," which is believed to be KENNETH[4], that texted HENRY and said, "What's up with ur man with the addy out of v.a." KENNETH texted HENRY and said, "The one u pick it up from last time." HENRY texted KENNETH and said, "Him deh bout man." On February 5, 2019, KENNETH texted HENRY and said, "Ask him can use it this eeek." KENNETH followed up that text to HENRY and said, "Week." Later the same day, KENNETH texted HENRY and said, "U ask dude bout the addy." On February 6, 2019, KENNETH texted HENRY and said, "Yo the name marcell fortner." HENRY replied to KENNETH and said, "Ok." KENNETH texted HENRY and said, "So dude out va going yo be

---

and HENRY. Furthermore, based on a fusion center product, KENNETH is identified as the "possible father" to HENRY.

[3] Based on knowledge of this investigation, specifically during the interviews with HENRY and SPAMPINATO, HENRY advised agents that he previously received a parcel at SPAMPINATO'S residence. SPAMPINATO advised agents he previously received another parcel on behalf of HENRY that SPAMPINATO believed contained controlled substances.

[4] Agents conducted an administrative subpoena for (703) 249-3787. Agents observed that the top caller of (703) 249-3787 was WISE and the fourth most contact was HENRY. Additionally, agents observed that following the seizure of the parcel on February 9, 2019, which KENNETH was present and detained by law enforcement, (703) 249-3787 was de-activated the same day.

home Saturday let me know trying to do something tomorrow." HENRY texted KENNETH and said, "I just asked him if he gon be there." KENNETH texted HENRY and said, "Kool let u know tomorrow when it's done." HENRY replied to KENNETH and said, "Ight." On February 9, 2019 at approximately 4:09 p.m., KENNETH texted HENRY and said, "It reach?"[5]

19. On February 9, 2019, agents observed where HENRY sent two images of the parcel that contained cocaine via WhatsApp to cellular number (530) 282-7192, believed to be another cellular phone that belonged to KENNETH. The photographs were the same photographs that were previously sent to HENRY by SPAMPINATO.[6]

**III. CONCLUSION**

19. Based on the facts outlined above, I respectfully submit there is probable cause to believe that from on or about January 2019 to the present, within the Eastern District of Virginia and elsewhere, defendants Michael Tyree SPAMPINATO, Kendall Earl HENRY, Maureen Marcell WISE, KENNETH Earl HENRY and KENNYDE CHEVON HENRY unlawfully, knowingly, and intentionally combined, conspired, confederated, and agreed with others, known and unknown, to unlawfully, knowingly, and intentionally distribute 500 grams or more of cocaine, a Schedule II controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846.

---

[5] Agents believe that the context of the aforementioned conversations between KENNETH and HENRY were in reference to the parcel that was seized by law enforcement on February 9, 2019.

[6] Agents conducted an administrative subpoena for (530) 282-7192. Agents observed that the top caller of (530) 282-7192 was WISE and the 11th most contact was KENNYDE. Additionally, agents observed that following the seizure of the parcel on February 9, 2019, which KENNETH was present and detained by law enforcement, (530) 282-7192 was de-activated on February 13, 2019.

10

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Kevin Fleenor
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me this 8th day of May, 2019.

/s/
Ivan D. Davis
United States Magistrate Judge